IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TODD JENNINGS, | : | |
| | : | CIVIL ACTION FILE NO. |
| Plaintiff, | : | 1:09-CV-1500-TWT-LTW |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner, Social Security | : | |
| Administration, | : | |
| | : | |
| Defendant. | : | |

**FINAL REPORT AND RECOMMENDATION ON AN
APPEAL FROM A SOCIAL SECURITY DISABILITY ACTION**

Plaintiff, a forty-five (45) year old male, seeks disability and disability insurance benefits under the Social Security Act ("the Act"), alleging disability due to degenerative disc disease of the cervical spine, depression, and diabetes mellitus. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim.

Plaintiff filed an application for disability insurance benefits and supplemental security income on November 8, 2004. (Record ("R.") 15). After that application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 6, 2008. (R. 15). At the administrative hearing, Plaintiff's attorney, Chad Napier, indicated that he would be submitting additional medical records from Grady Health System. (R. 291). The ALJ

agreed to keep the record open for thirty days until June 6, 2008, to provide Plaintiff the opportunity to submit his additional medical records from Grady Health System.  (R. 291-92).   Plaintiff's counsel, Mr. Napier, forwarded to the ALJ "updated medical records" from Grady Health System which indicated "treatment for [Plaintiff's] mental disorder as well as for his severe neck impairment." (R. 220).  The ALJ issued a decision on September 9, 2008, denying Plaintiff's claim on the grounds that he was not under a "disability" as defined by the Act.  (R. 12-14).  On January 27, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision and made that decision the final decision of the Commissioner. (R. 6-8).  Plaintiff, having exhausted all administrative remedies, filed this action on April 2, 2009. Docket Entry [2].  Plaintiff subsequently filed a motion to reverse the ALJ's decision and to remand this case for further proceedings.  It is now before the undersigned upon the administrative record, the pleadings, and the parties' briefs, and is ripe for review pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the undersigned **RECOMMENDS** that this matter be **REMANDED PURSUANT TO SENTENCE SIX OF 42 U.S.C. § 405(g)**.

I.   <u>**STANDARD FOR DETERMINING DISABILITY**</u>

An individual is considered to be disabled for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from

2

anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and be of such severity that the claimant is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3).

The burden of proof in a social security disability case is divided between the claimant and the Commissioner.  The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that he or she is unable to perform his or her former type of work.  Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering claimant's age, education, work experience and impairment, there are some other types of jobs that exist in the national economy that the claimant can perform.  The overall burden, however, rests upon the claimant to prove that he or she is unable to engage in any substantial gainful activity that exists in the national economy.  Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

As summarized below, a five-step sequential analysis must be used when evaluating a disability claim.

(1)     The Commissioner must determine whether the applicant is currently working; if so, the claim is denied.

(2)     The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments significantly limits the individual's physical or mental ability to do basic work activities; if not, the claim is denied.

(3)     The Commissioner must determine whether the impairment equals or exceeds in severity certain impairments described in the impairment listings

3

in the regulations; if it does, the claimant is automatically entitled to disability benefits.

(4)     The Commissioner must determine whether the applicant has sufficient residual functional capacity to perform past work; if so, the claim is denied.

(5)     The Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other gainful and substantial work within the economy; if so, the claim is denied.

See 20 C.F.R. §§ 404.1520-404.1576.

## II.     **FINDINGS OF THE ALJ**

The ALJ made the following findings of fact:

(1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

(2)     The claimant has not engaged in substantial gainful activity since May 24, 2004, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), and 416.971 et seq.).

(3)     The claimant has the following severe impairments: degenerative disc disease of the cervical spine, depression, and diabetes mellitus (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) that allows for bending, squatting, and stooping occasionally and moderate pain.

(6)     The claimant is capable of performing past relevant work as a security guard.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

4

(7)    The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2004 through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(R. 17-21).

## III.    CLAIMS OF ERROR

Plaintiff alleges that the decision of the Commissioner is in error for the reasons set forth below.

1.    The ALJ failed to include any depression related limitations in his description of Plaintiff's mental limitations.

2.    The ALJ failed to evaluate Plaintiff's limited ability to sit or walk for extended periods.

3.    The ALJ's reasons for rejecting Plaintiff's credibility is not supported by substantial evidence.

## IV.    SCOPE OF JUDICIAL REVIEW

The scope of judicial review of the Commissioner's denial of social security benefits is limited.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  The only function of the court is to determine whether there is substantial evidence in the record to support the findings and decision of the Commissioner and whether proper legal standards were applied in the fact-finding process.  The Commissioner's findings are conclusive if supported by substantial evidence and proper legal standards were applied.  Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th

5

Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239.  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  In contrast, review of the ALJ's application of legal principles is plenary.  Walker, 826 F.2d at 999.

## V.    **BACKGROUND FACTS**

Plaintiff was forty-three years old when the ALJ issued his decision.  (R. 52).  Plaintiff has a sixth grade education.  (R. 298).  Plaintiff has past relevant work as a forklift mechanic, woodworker, dock worker, security guard, parts puller, and parts counter worker.  (R. 294-97).  Plaintiff was last employed in 2004, and his date last insured was December 31, 2009.  (R. 15).  In 1996, Plaintiff fell into a swimming pool and suffered a disk herniation at the C3-4 and C4-5 levels.  (R. 94).  Plaintiff underwent a diskectomy for his herniation and subsequently reported substantial improvement. (R. 94).  On May 23, 2004, Plaintiff injured his neck and was admitted to Newton General Hospital complaining of neck pain and arm weakness.  (R. 125-26).  An MRI study of Plaintiff's cervical spine revealed herniated disks at the C5-6 and C6-7 levels.  (R. 128).

6

Plaintiff  was referred to Dr. David Hubbel at Emory Spine Center on July 13, 2004, for further evaluation and treatment.  (R. 149-59).  Dr. Hubbel performed a multiple level laminoplasty of the cervical spine from C3 to C7 on July 26, 2004.  (R. 152).  Plaintiff returned in follow up through October 15, 2004, and reported his bilateral upper extremity weakness was improving.  (R. 149).  Dr. Hubbel noted that since Plaintiff's insurance denied his request for physical therapy, Plaintiff was given a home exercise program to help regain strength in the upper extremities.  (R. 149).  There is no evidence in the record that Plaintiff was examined by a physician after October 2004 until he presented to Dr. Muther Kuttappan for a State agency medical consultative evaluation on May 6, 2005.  (R. 169-75).  On examination, Plaintiff had limited range of motion in his spine and reported that on a pain scale of one to ten with ten being the worst pain, his pain was a five in nature.  (R. 169).  An x-ray study of Plaintiff's cervical spine on November 15, 2005, at Sylvan Grove Hospital revealed degenerative changes in the cervical spine but there was no indication that Plaintiff received treatment for this condition again until October 27, 2006.  (R. 251-52 ).  At that time, Plaintiff presented to the emergency room for treatment of neck pain due to a motor vehicle accident the day before.  (R. 252).  It was noted that Plaintiff's current medications included Seroquel, Risperdal, and HCTZ.  (R. 251).  Dr. Kuttappan  prescribed Vicodin and Ibuprofen, medications for Plaintiff's mild to moderate pain.  (R. 247).  Plaintiff returned for a routine follow up visit on December 27, 2006, and reported the pain in his neck had improved.  (R. 244).  In follow up on February 21, 2007, Plaintiff's only complaint

7

related to cervical spine tenderness. (R. 242). There were no further office visits until July 18, 2007, after an MRI study of Plaintiff's cervical spine which revealed findings consistent with myelomalacia. (R. 232). Treatment notes through January 2, 2008, reflected Plaintiff continued to be treated routinely with Vicodin. (R. 223). In addition, the objective medical evidence received from Grady Health System in June 2008 reflected Plaintiff's last office visit was on January 2, 2008. (R. 222).

## VI.   <u>LEGAL ANALYSIS</u>

On April 2, 2009, Plaintiff filed a Complaint in this Court alleging the ALJ (1) failed to include any depression related limitations in his description of Plaintiff's mental limitations; (2) failed to evaluate Plaintiff's limited ability to sit or walk for extended periods; and (3) the ALJ's reasons for rejecting Plaintiff's credibility were not supported by substantial evidence. Docket Entry [2]. Subsequently, on January 25, 2009, Plaintiff submitted additional evidence from Grady Health System and moved this Court to remand this case under sentence six of 42 U.S.C. § 405(g) in light of the newly submitted evidence. Docket Entry [21]. The Commissioner filed a response in opposition to Plaintiff's motion for remand. Docket Entry [22]. Having read and considered the record, the brief submitted by both parties as well as the medical records submitted by Plaintiff, this Court finds that remand of this case for further proceedings is appropriate.

Generally, a claimant is allowed to present new evidence at each stage of the administrative process. <u>See</u> 20 C.F.R. § 404.900(b); <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1260-61 (11th Cir. 2007). However, "not every discovery of

AO 72A
(Rev.8/82)

new evidence, even if relevant and probative, will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing." Caulder v. Bowen, 791 F.2d 872, 876 (11th Cir. 1986) (internal quotation marks omitted). Accordingly, sentence six encompasses only those instances in which "the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Ingram, 496 F.3d at 1267 (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). To obtain a sentence six remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable probability that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level. See Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218-19 (11th Cir. 2001); Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988). The new evidence must relate back to the time period on or before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b); Barclay v. Comm'r of Soc. Sec. Admin., 274 F. App'x. 738, 743-44 (11th Cir. 2008).

Initially, the Court notes that Plaintiff's new evidence was presented for the first time to the Court. Therefore, sentence six is the appropriate standard for determining whether the evidence warrants a remand. After reviewing the record, this Court concludes that Plaintiff's newly submitted evidence meets the requirements for a remand. In making this determination, this Court reviewed the entire record in this case including,

9

but not limited to Plaintiff's medical history and the documents submitted to this Court.

In support of Plaintiff's motion to remand, Plaintiff submitted three exhibits, psychiatric treatment records from Grady Health System, a statement from Plaintiff's former attorney, Chad Napier, verifying he requested **all** records from Grady Health System and did not realize he had only been sent some records, and psychiatric treatment records from McIntosh Trail Community Service Board.

Plaintiff contends the Grady and McIntosh Trail Community Service Board records show mental health treatment not documented by other evidence.  The Commissioner appears to concede that the evidence is new and was not previously submitted to the ALJ because the Commissioner does not argue the evidence submitted is not new.  Instead, the Commissioner argues Plaintiff cannot demonstrate good cause for failing to submit the new evidence at the administrative level and that the evidence is not material because it would not change the ALJ's decision.[1]  Thus, this Court will only address whether the evidence Plaintiff submitted from Grady Health System, Plaintiff's former counsel Napier, and McIntosh Trail Community Service Board is material and whether good cause exists for Plaintiff's failure to submit the evidence during his administrative hearing.

_____

[1]Evidence is "new and noncumulative if the evidence submitted sheds light on an ill-developed psychiatric issues or raises psychiatric issues not previously addressed." Blake v. Massanari, No. 00-0120-AH-L, 2001 WL 530697, at *8 (S.D. Ala. Apr. 26, 2001) (citing Cherry v. Heckler, 760 F.2d 1186 (11th Cir. 1985)).

AO 72A
(Rev.8/82)

### A.    <u>Whether Plaintiff can Demonstrate Materiality</u>

Plaintiff contends the new evidence is material given that the ALJ found Plaintiff not fully credible in large part because the ALJ believed Plaintiff had not sought mental health treatment after his initial June 19-21, 2006, involuntary, psychiatric hospitalization.  Plaintiff further contends that the Grady and McIntosh Trail Community Service Board records show Plaintiff did seek follow-up treatment.  Lastly, Plaintiff contends that if  the ALJ had the benefit of this information, there is a reasonable probability that the ALJ would have found Plaintiff credible, and awarded him disability benefits.  The  Commissioner argues in opposition that the new records are not material in that they  could not be reasonably expected to change the ALJ's decision regarding Plaintiff's  condition on or before September 9, 2008.  The Commissioner also argues Plaintiff's  October 6, 2008, and February 3, 2009 records, like the records in the administrative  record, do not indicate Plaintiff suffered any work limitations due to his alleged mental   conditions.  Lastly, the Commissioner contends that none of the additional records  Plaintiff submitted substantiate Plaintiff's claim that he suffered from bipolar disorder   which caused difficulties in his concentration.  Contrary to the Commissioner's   arguments, this Court finds Plaintiff's newly submitted evidence is material because it repeatedly references Plaintiff's bipolar disorder, which may change the administrative outcome.

### 1.    <u>The ALJ's Discussion of Plaintiff's Mental Impairment</u>

In addressing Plaintiff's mental impairment, the ALJ observed that there was no

11

evidence of record showing that Plaintiff suffered from any mental impairment until June 19, 2006, when he was hospitalized at West Central Georgia Regional Hospital for evaluation of a possible suicide attempt.  (R. 19, 198-219).   At that time, Plaintiff underwent a mental status examination wherein he was diagnosed with depressive disorder, NOS with an estimated global assessment functioning of 58, an indication of only moderate limitations from psychologically based symptoms.  (R. 204).  Plaintiff admitted he had filed for disability benefits and stated that he felt that being hospitalized would help him get approved for disability benefits.  (R. 202).  When Plaintiff was discharged on June 21, 2006, his global assessment of functioning had improved and was estimated to be 74.  (R. 199).  The ALJ noted that although an appointment was scheduled for Plaintiff at Butts County Mental Health Center on June 23, 2006, there was no evidence of record Plaintiff followed through with treatment recommendations.  (R. 19).  The ALJ addressed Plaintiff's treatment notes from Grady Health System through January 7, 2008, and observed that these records did not reflect complaints of depression or a diagnosis of depression until his office visit on September 17, 2007.  (R.  19, 225-26).  Even then, the ALJ noted there were no complaints or symptoms and Plaintiff's depression was stable.  (R. 226).  The ALJ further pointed out that there was also no evidence of record that Plaintiff required mental health care, or that he had been diagnosed with bipolar disorder, experienced racing thoughts, or that he experienced difficulty distinguishing between his thoughts and reality.  (R. 20). Plaintiff stated that he experienced racing thoughts and had difficulty distinguishing between his thoughts

AO 72A
(Rev.8/82)

and reality at least twice per week, but the ALJ noted there was no evidence of record Plaintiff had ever been diagnosed or treated for this condition.  (R. 20).  Because of the lack of evidence in the record and because Plaintiff has not complained of the disabling symptoms to any treating or examining physician, the ALJ found Plaintiff's claim of ongoing, disabling symptoms of such frequency, severity, and duration from bipolar disorder uncredible.  (R. 20).

2.   Plaintiff's Grady Health System Records

Although the ALJ indicated that Plaintiff did not report for follow up treatment after his initial June 2006 hospitalization, there was no evidence Plaintiff was diagnosed with or treated for bipolar disorder, and Plaintiff did not report symptoms such as racing thoughts and difficulty distinguishing between his thoughts and reality to any of his treating physicians, the newly submitted evidence belies the ALJ's contention.  One of the documents included in the newly submitted evidence is a Medical Discharge Summary with an admission date of October 15, 2007, and a discharge date of October 17, 2007.  Docket Entry [21-1].  The Discharge Summary indicates Plaintiff was being prescribed medication for his alleged depression and bipolar disorder.  Docket Entry [21-1].  Plaintiff was prescribed Seroquel (which is used to treat bipolar disorder).[2]  Docket

_____

[2]Seroquel is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions), episodes of mania (frenzied, abnormally excited or irritated mood), and depression in patients with bipolar disorder (manic depressive disorder, a disease that causes episodes of depression, episodes of mania, and other abnormal moods).  Paxil is used to treat depression, panic disorder (sudden, unexpected attacks of extreme fear and worry about these attacks), and social anxiety disorder (extreme fear of interacting with

13

Entry [21-1].  The treatment notes indicate Plaintiff was instructed to discontinue his use

of other antidepressants, Paxil (used to treat depression, panic disorder and social anxiety

disorder), and Amitriptyline (also used to treat depression). Docket Entry [21-1].  The

treatment notes also appear to indicate that the attending clinician/physician referred

Plaintiff for a "psych consult."  Docket Entry [21-1].  Another new document submitted

by Plaintiff dated October 16, 2007,  indicates "Psych was consulted to address his dx

(diagnosis) for [b]ipolar  disorder . . . ."  Id.   It was noted that Plaintiff admitted to

having previous suicide ideations along with a previous attempt in 1997; however,

Plaintiff denied having suicidal ideations at the time of his psych consult.  Id.  The

treatment notes reveal that Plaintiff reported "hearing voices in his head with regards to

his family situation."  Id.

Additional Grady Health System records show Plaintiff was seen in the Psychiatry

Emergency Service on March 17, 2008.  Id.  It was noted that Plaintiff was homeless and

that he reported that he had run out Seroquel.  Id.  A fall risk screen assessed Plaintiff as

positive for confusion, hallucinations, or agitation more than the usual baseline.  Id.

Plaintiff's Seroquel was refilled for "dx [diagnosis] Bipolar d/o [disorder], Borderline

schizophrenia."  Id. Another newly submitted document dated April 2, 2008, reveals

Plaintiff reported to Grady's Psychiatric Emergency Service with complaints of

---

others or performing in front of others that interferes with normal life).  Amitriptyline
is used to treat symptoms of depression and works by increasing the amounts of certain
natural substances in the brain that are needed to maintain mental balance.  See
http://www.nlm.nih.gov/medlineplus/druginfo/meds/

AO 72A
(Rev.8/82)

decreased sleep, depression, and racing thoughts.  Id.  It was noted that Plaintiff's Seroquel was not only refilled, but also increased.  It bears noting that the October 15-16, 2007, March 17, 2008, and April 2, 2008 documents relate back to the time period on or before the date of the ALJ's decision, September 9, 2008.

Because these treatment notes relate to the time period which the ALJ was required to consider and are probative as to the ALJ's discrediting Plaintiff's complaints of disabling pain and depression, this Court finds the treatment notes are therefore material. Accordingly, there is a reasonable possibility that these treatment notes would change the administrative result.  See Caulder, 791 F.2d at  877.  Furthermore, the Commissioner does not contend nor is there any evidence to suggest that these treatment notes reflect any bad faith attempt by the Plaintiff to manipulate the administrative process.  See Milano v. Bowen, 809 F.2d 763, 767 (11th Cir. 1987).

Plaintiff submitted additional Grady Health System outpatient psychiatric notes that reveal treatment Plaintiff received after the ALJ's decision.  Plaintiff submitted treatment notes dated October 6, 2008, that show Plaintiff had an outpatient mental health appointment and requested a prescription for an unspecified medication.  Docket Entry [21-1].  Plaintiff's request was denied because it was noted that a prescription for a psychotropic medication had already been provided to Plaintiff three days earlier on October 3, 2008.  Id.  On February 3, 2009, Plaintiff was seen at Grady's Psychiatric Emergency Service and again diagnosed with bipolar disorder.  Id.  It was noted that Plaintiff was homeless and in a wheelchair.  Id.  These treatment notes, while not in

15

existence at the time of the ALJ's decision, are material in that they substantiate Plaintiff's previously asserted mental impairments. These after-acquired treatment records are also relevant and probative of the ALJ's determination that Plaintiff was not credible. At the time the ALJ rendered his decision, there was no evidence of record that Plaintiff required mental health care, except for the brief episode in 2006. There was also no evidence to support Plaintiff's testimony that he had been diagnosed or treated for a bipolar disorder. (R. 20). The later records support Plaintiff's testimony that he suffered from bipolar disorder and show that after the ALJ's decision, Plaintiff continued seeking treatment for depression and bipolar episodes. These records also demonstrate that Grady Health System continued to prescribe the same antipsychotic/antidepressant medications Plaintiff was receiving prior to the ALJ's decision.

This Court finds that the newly submitted Grady Health System treatment records constitute material new evidence and give rise to a reasonable possibility that the administrative outcome would be changed. Cherry, 760 F.2d at 1193. Despite the Commissioner's argument that the Grady documents are not material, this Court disagrees. The materiality requirement is not rebutted by the Commissioner's statement that the new evidence would not ultimately change the decision because such a statement is not in the certified record and therefore, carries little weight and is advisory at best. Caulder, 791 F.2d at 877; Cherry, 760 F.2d at 1194.

It appears to this Court that the ALJ completely rejected Plaintiff's testimony regarding his bipolar disorder and severely discounted Plaintiff's depression based on the

AO 72A
(Rev.8/82)

lack of objective medical evidence to support Plaintiff's testimony.  As a result of the ALJ's discounting and/or rejection of Plaintiff's testimony regarding his depression and bipolar disorder, the ALJ's RFC finding failed to include any depression or bipolar related limitations.  Without this evidence, a proper view of the case is skewed, making it impossible to conclude that the decision is supported by substantial evidence.  See Caulder, 791 F.2d at 878, citing Dorsey v. Heckler, 702 F.2d 597, 605 (5th Cir. 1983) (quoting Essig v. Secretary of Health & Human Services, 531 F. Supp. 55, 57 (E.D.N.Y. 1981)).  These treatment records could substantiate Plaintiff's assertion that he has severe mental impairments or that his combination of impairments presents more than "a slight abnormality which has such minimal effect on the individual, that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); 20 C.F.R. § 404.1520(b)-(c).  Accordingly, this Court is unable to conclude that substantial evidence supports either the ALJ's credibility finding or RFC assessment, and finds remand is appropriate.

        3.      Plaintiff's McIntosh Trail Community Service Board  Records

Plaintiff has also submitted records from McIntosh Trail Community Service Board which show that on June 27, 2006, Plaintiff presented with complaints of anger, depression, and anxiety.  Docket Entry [21-3].  These records indicate that Plaintiff was "referred from West Central after hospitalization 3-4 days."  Id.  Plaintiff was threatening to hurt himself and others.  Id.  It was noted that Plaintiff took 100 pills in 10 days.  Id.

Signs and symptoms of severe depression were also noted.  Id.  Plaintiff reported that he had tried Prozac, but it did not work right.  Id.  Plaintiff was diagnosed with major severe depression, prescribed Cymbalta for his depression, and prescribed Seroquel and Resperdal for anger control and anxiety.[3]  Id.  Similar to the Grady Health System treatment notes, the McIntosh records relate to the time period which the regulations require the ALJ to consider Plaintiff's mental impairments as the condition(s) existed prior to the ALJ's decision.  These records also support Plaintiff's testimony regarding his mental impairment and are in contrast to the ALJ's determination that there was no evidence of record that Plaintiff required mental health care except for a brief episode in 2006.  (R. 20).  These records are also inconsistent with the ALJ's observations that there is no evidence of record that Plaintiff followed through with [mental health] treatment recommendations.  (R. 20).  The McIntosh Trail Community Service Board records when reviewed along with the Grady Health System records may demonstrate that Plaintiff's mental impairments had more than a mild restriction on daily living activities and Plaintiff suffered more than mild difficulties with regard to concentration, persistence, or pace as determined by the ALJ.  (R.  19).  The McIntosh Trail Community Service Board records and the Grady Health System records may also show collectively that

---

[3]Cymbalta is used to treat depression and generalized anxiety disorder  (GAD; excessive worry and tension that disrupts life and lasts for six months or longer). It is also used to treat pain and tingling.  Resperdal is used to treat the symptoms of schizophrenia in adults and teenagers thirteen years of age and older.  It is also used to treat episodes of mania or mixed episodes (symptoms of mania and depression that happen together) in adults and in teenagers and children ten years of age and older with bipolar disorder.  See http://www.nlm.nih.gov/medlineplus/druginfo/meds/

18

Plaintiff has experienced episodes of decompensation despite the ALJ's finding to the contrary.  Accordingly, this Court finds the McIntosh Trail Community Service Board records material and there is a reasonable probability that the new evidence may change the administrative outcome.[4]

### B.     Whether Plaintiff Can Demonstrate Good Cause

Plaintiff contends good cause exists for his failure to submit the documents at his administrative hearing because Grady Health System failed to produce all medical records requested by his administrative counsel.  The Commissioner argues in opposition that Plaintiff cannot demonstrate good cause exists for  Plaintiff's failure to submit the evidence at the administrative level. This Court disagrees.

In support of Plaintiff's argument that he had good cause for failing to submit the Grady Health System records and the McIntosh Trail Community Service Board psychiatric records to the ALJ or Appeals Council, Plaintiff submitted a letter from his former counsel, Mr. Napier, confirming that counsel requested **all** of Plaintiff's mental health treatment records from Grady Health System (the Napier Documents).  Docket Entry [ 21-2].  Attached to Mr. Napier's letter is a letter dated April 10, 2008, requesting Plaintiff's mental health records and a copy of a billing  invoice for the records.  Mr. Napier asserts that he was informed by Plaintiff's current attorney, Michael Phillips, who is more familiar with Grady Health System's practices, that the hospital is notorious for

---

[4]The Napier records are deemed relevant and material only to the extent that Plaintiff demonstrates good cause for his failure to submit the Grady Health System records during the administrative hearing.

AO 72A
(Rev.8/82)

not providing all medical records in response to attorney requests.  Id.

Although the newly submitted medical evidence (Grady Health System) was in existence prior to the ALJ's decision, this Court finds that Plaintiff had good cause for his failure to provide these documents to the ALJ during his administrative hearing. Plaintiff's former counsel did not know and had no reason to suspect that the treatment records received from Grady were incomplete.   Grady's error was subsequently discovered by Plaintiff's new attorney.  If the same attorney represented Plaintiff at both hearings, this Court may have been inclined to render a different decision.  This Court notes that at least two other courts, under similar facts, have reached a similar result and found good cause exists to present new evidence when plaintiff's former counsel failed to present the new evidence earlier.  In Pruitt v. Astrue, No. 07-0634-M, 2008 WL 801799 (S.D. Ala. Mar. 24, 2008), the court found good cause for the failure to present new evidence earlier.  Id. at *4.  While there was no explanation for the claimant's prior counsel not presenting the evidence, the court reasoned that it did not "want to see the error compounded."  Id.  The court also noted that the "ALJ directly put into issue the lack of evidence in this action."   Id.  There, the court further noted "had Plaintiff's current attorney represented Plaintiff from the beginning and neglected to present all of the information to the ALJ for his review, this court would not likely find good cause. However, that is not the case."  Id.  Thus, the court determined that the new evidence should be considered. Id.

Similarly, in Digiovanni v. Apfel, No. 97-245-Civ-FTM-21D, 1999 WL 33601325 (M.D. Fla. Feb. 8, 1999), a Florida district court held that plaintiff established good cause for submitting new and material evidence.   In that case the court allowed for consideration of new evidence including a medical evaluation form completed by the claimant's treating physician indicating that the claimant was totally disabled, even though the court acknowledged that the claimant could have obtained the report at any time prior to or during the administrative proceedings. Id. at *5. In Digiovanni, the court allowed the newly submitted evidence because the claimant's prior counsel failed to obtain the new report and once new counsel was retained, the new counsel "did immediately obtain the report and did submit it as soon as it was practicable." Id. There, the court found that "plaintiff should not be denied an opportunity for the ALJ and Appeals Council to fairly review his case based upon failure of initial counsel to obtain material evidence in this case." Id.

This Court also finds good cause for Plaintiff's failure to submit the McIntosh Trail Community Service Board records at the administrative level.  Plaintiff's new counsel contends that as a result of Plaintiff's documented homelessness and mental illness, Plaintiff could not have been expected to ensure his former counsel knew of every mental health treatment document that existed.   Plaintiff contends that when he eventually lived with his sister and her husband, they helped him obtain a more complete record which he brought to his new counsel.

21

The Court further finds that a sentence six remand is appropriate since the undersigned is unable to determine whether the newly submitted psychiatric records would alter the ALJ's initial decision that Plaintiff was not credible. (R. 20). See <u>Falcon v. Heckler</u>, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work)**.** See also <u>Milano</u>, 809 F.2d at 766-67 (11th Cir. 1987) (ordering a sentence six remand based on evidence first properly submitted to the district court); <u>Cherry v. Heckler</u>, 760 F.2d 1186, 1193-94 (11th Cir. 1985) (same); <u>Epps v. Harris</u>, 624 F.2d 1267, 1273 (5th Cir. 1980) (same); <u>Johnson v. Harris</u>, 612 F.2d 993, 998-99 (5th Cir. 1980) (same); <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1278 (11th Cir. 1999) (new evidence will not be considered for the first time on appeal in this Court for the purposes of a sentence six remand).

## **CONCLUSION AND RECOMMENDATION**

For the reasons stated above, it is hereby **RECOMMENDED** that the decision of the Commissioner be **REMANDED PURSUANT TO SENTENCE SIX OF 42 U.S.C. § 405(g)**. As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this <u>5th</u> day of August, 2010.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TODD JENNINGS, | : | |
| | : | CIVIL ACTION FILE NO. |
| Plaintiff, | : | 1:09-CV-1500-TWT-LTW |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner, Social Security | : | |
| Administration, | : | |
| | : | |
| Defendant. | : | |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C.  Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation **within fourteen (14) days of the receipt of this Order.**  Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court.  If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review.  United States v. Slay, 714 F.2d 1093 (11th Cir. 1983),

AO 72A
(Rev.8/82)

cert. denied 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

      The Clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

      **SO ORDERED**, this 5th day of August, 2010.


                            s/Linda T. Walker
                            LINDA T. WALKER
                            UNITED STATES MAGISTRATE JUDGE